UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

HARRY L. SCOTT

    Plaintiff,

-v-

CITY OF DAYTON, et al.,

    Defendants.

Case No. C-3-04-420

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING PLAINTIFF'S PARTIAL MOTION TO DISMISS (Doc. #45); GRANTING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. #42); OVERRULING PLAINTIFF'S MOTION FOR A CONTINUANCE (Doc. #44) AND FINDING DEFENDANTS' MOTION FOR SEPARATE TRIALS (Doc. #38) MOOT**

---

  This matter arises from the arrest and subsequent incarceration of Plaintiff Harry L. Scott ("Scott"). Scott brings claims against Defendant Montgomery County, Ohio ("Montgomery County"), Montgomery County Sheriff Dave Vore ("Sheriff Vore"), the City of Dayton, Ohio ("City of Dayton"), Dayton Chief of Police Julian K. Davis ("Chief Davis") and Dayton Police Officers Gary W. Lowe ("Officer Lowe") and Steven McCall ("Officer McCall").

  Scott also brings claims against unnamed City of Dayton and Montgomery County Officials. Since the unnamed individuals have not subsequently been identified, they will no longer be considered.

  Following discovery, Scott moved to dismiss "the Montgomery County Sheriff's Department," presumably named Defendant Montgomery County, and Sheriff Vore. (Doc. #45.) Montgomery County and Sheriff Vore joined in this Motion and the remaining Defendants have not objected. Therefore, Scott's Partial Motion To Dismiss Montgomery County and Sheriff

Vore is GRANTED and these Defendants will no longer be considered.

Captioned as "Federal Theories of Recovery," Scott alleges that the Defendants deprived him of his Fourth Amendment right to be free from unlawful seizure, his Fifth and Fourteenth Amendment due process rights and his Eighth Amendment rights to be free from cruel and unusual punishment. These theories of recovery are against the City of Dayton both as a person and because of the authorization, condonation and ratification of the acts of the City of Dayton's agents. Chief Davis and Officers Lowe and McCall are sued in both their individual and official capacities.

Scott then alleges seven Counts captioned as "State Law Theories of Recovery." Count I is against Officers Lowe and McCall for battery. Count II is against Officers Lowe and McCall for assault. Count III is also an assault claim against Officers Lowe and McCall. Count IV of Scott's "State Law Theories of Recovery" is for intentional infliction of emotional distress against all of the Defendants. Count V is against Officers Lowe and McCall for false imprisonment. Count VI is a federal due process claim against all of the Defendants brought pursuant to 42 U.S.C. § 1983. Count VII is for punitive damages against all of the Defendants.

Now before the Court is a Motion for Partial Summary Judgment filed by the City of Dayton, Chief Davis and Officers Lowe and McCall (hereinafter the "Defendants"). (Doc. #42.) Scott has responded, including a Motion for a Continuance Pursuant to Fed.R.Civ.P. 56(f), and the Defendants have replied. The Motion for Partial Summary Judgment is, therefore, ripe for decision.

Also before the Court is the Defendants' Motion for Separate Trials. (Doc. #38.) This motion is unopposed and is also ripe for decision.

**MOTION FOR A CONTINUANCE PURSUANT TO RULE 56(f)**

Scott's Motion for a Continuance will first be addressed. (Doc. #44.) In this motion, Scott argues that he should be allowed sufficient time to conduct additional discovery. The only additional discovery identified is the deposition of Chief Davis. Scott specifically argues that, although the Defendants have attached the Affidavit of Chief Davis to their Motion for Partial Summary Judgment, he has not had the opportunity to depose Chief Davis to obtain "crucial information for Scott's opposition to this summary judgment motion, including information regarding the customs and policies of the Dayton Police Department and Chief Davis' personal involvement with this case." Scott, however, offers no reason as to why he has been unable to complete this discovery.

The Defendants respond that Scott's Rule 56(f) motion should be denied. In support, the Defendants argue that Chief Davis was named as a party-defendant more than 2½ years ago, Scott never requested the deposition of Chief Davis, the discovery deadline has passed and neither Scott's counsel's Affidavit nor the arguments accompanying Scott's motion meet the substantive requirements of Rule 56(f).

Chief Davis was named as a defendant when Scott's Complaint was filed on December 3, 2004. (Doc. #1.) The Preliminary Pretrial Order ("PPTO") was issued on April 13, 2005. (Doc. #11.) The PPTO set the discovery deadline at June 30, 2006.

Scott filed his Witness List on September 29, 2005. (Doc. #13.) Chief Davis is on this list.

On June 14, 2006, the Parties jointly sought an extension of the discovery deadline until August 31, 2006. (Doc. #25.) This request was granted.

On September 8, 2006, following the current discovery deadline, Scott again requested an extension of the discovery deadline based upon the personal reasons of counsel Taylor Jones, Jr. (Doc. # 28.) The previous trial schedule was vacated and a new discovery deadline of February 16, 2007, was established. (Doc. # 29.)

On February 14, 2007, the Parties jointly requested a sixty-day extension of the discovery deadline. (Doc. #30.) The discovery deadline was extended by the Court to April 17, 2007. No further extensions of the discovery deadline have been requested until Scott's Rule 56(f) motion was filed on June 4, 2007.

Turning to the law regarding Rule 56(f), it is well established that the scope of discovery is within the sound discretion of the district court. *Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1989). Therefore, a party, such as Scott, who opposes summary judgment has no absolute right to additional time for discovery. *Id.* However, Rule 56(f) provides a mechanism through which a party may obtain more time. *Id.*

However, "Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Id.* Further, a party seeking to extend discovery pursuant to Rule 56(f) must affirmatively demonstrate why he cannot respond to a movant's affidavits as otherwise required by Rule 56 and how postponement of a ruling on the motion for summary judgment will enable him to rebut the movant's showing of the absence of a genuine issue of material fact. *Id.*

In this case, Scott was aware that he had named Chief Davis as a party-defendant and as his witness. Yet, he has offered no explanation as to why he has not taken, nor even noticed, the deposition of Chief Davis in the extensive time allotted to discovery. The only Affidavit before

the Court that relates to Scott's Rule 56(f) motion indicates that additional discovery is necessary to respond to Defendants' Motion for Summary Judgment. (Affidavit of Kenneth J. Ignozzi ¶ 2 June 4, 2007.) However, this Affidavit offers no explanation as to why the requested discovery has not been completed nor how an extension of discovery would permit Scott to prove his claims against Chief Davis and the City of Dayton. Finally, ample time has been allotted for discovery in this matter including the granting of three requested extensions of the original discovery deadline. Therefore, Scott's Motion for a Continuance Pursuant to Fed.R.Civ.P. 56(f) (doc. # 44) is OVERRULED.

The analysis next turns to the Defendants' Motion for Summary Judgment. A brief summary of the facts will be followed by the standard of review for motions for summary judgment and an analysis of the Motion.

## FACTUAL BACKGROUND

On December 7, 2003, Scott was sitting at a public bus stop near North Main and Warden streets in Dayton. (Deposition of Harry Scott ("Scott Dep.") 39 7/21/06.) He was drinking a forty-ounce beer with an acquaintance named Mr. Wilson ("Wilson"). (Id.)

Officers Lowe and McCall were on patrol in the area that night when they noticed two forty-ounce beers sitting on the ground near Scott and Wilson. (Deposition of Officer Gary W. Lowe ("Lowe Dep.") 22 7/21/06.) Officer McCall parked the police cruiser and Officers Lowe and McCall approached Scott and Wilson and requested identification. (Scott Dep. 40; Lowe Dep. 24.) Upon processing Scott's identification, Officer Lowe discovered that Scott had two outstanding arrest warrants and placed Scott under arrest. (Scott Dep. 40-43; Lowe Dep. 24-25.)

After being placed in the police cruiser but before being transferred to jail, Scott and

Officer McCall allegedly argued. (Scott Dep. 46-47.) After the verbal exchange, Scott alleges that Officer McCall pulled him out of the police cruiser by his neck and kneed him in the groin and/or stomach. (Scott Dep. 48-52.) However, Officer McCall testifies that, although Scott was "boisterous and loud," he was compliant with the Officer's commands at all times during the incident. (Deposition of Officer Steven B. McCall ("McCall Dep.") 30, 51-52 7/21/06.)

Scott testifies that Officer Lowe was at all times "professional about his job." (Scott Dep. 53-54.) Scott has no complaints regarding Officer Lowe's conduct that evening. (Id.)

Scott was then transported to jail. (Scott Dep. 53.) Cocaine was discovered in a hat at the jail, and thereafter Scott pled guilty to possession of cocaine. (Scott Dep. 21.)

As a result of the alleged blow by Officer McCall, Scott was allegedly severely injured including the surgical removal of his left testicle. Scott then brought this action against the Defendants for the excessive force exercised by Officers McCall and Lowe in executing his arrest.

Factual allegations regarding Montgomery County and Sheriff Vore are omitted since these Defendants have been dismissed. The analysis now turns to the standard of review for motions for summary judgment.

**STANDARD OF REVIEW FOR MOTIONS FOR SUMMARY JUDGMENT**

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that

party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the non moving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the non moving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

Scott's Complaint includes claims brought pursuant to Ohio law. In reviewing an Ohio claim, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the state.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th

Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998)). Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms. Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)).

## MOTION FOR PARTIAL SUMMARY JUDGMENT

The Defendants argue that the City of Dayton and Chief Davis are not liable for any of Scott's claims against them. They also argue that Scott's claim for false imprisonment fails as a matter of law and that Officer Lowe must be dismissed as a matter of law. Each of these allegations will be addressed seriatim.

### Claims Against the City of Dayton

The Defendants argue that the City of Dayton is not liable for the Officer's alleged constitutional violations, that the City of Dayton is entitled to judgment as a matter of law on Scott's failure-to-train theory and on Scott's state tort claims and that the City of Dayton is entitled to judgment as a matter of law on Scott's claim for punitive damages. Scott's only response to this allegation is that he needs additional time to conduct discovery, an issue that has been addressed above.

A municipality, such as the City of Dayton, cannot be held liable under Section 1983 on a theory of *respondeat superior* for an injury inflicted solely by its employees. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). To hold a municipality liable under Section 1983, a plaintiff must prove that a municipal employee caused a constitutional violation and that a municipal custom or policy was the "moving force" behind the alleged constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), *Polk*

*County v. Dodson*, 454 U.S. 312, 326 (1981). To be successful, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987).

In this case, the City of Dayton has a specific policy involving the use of force and all City of Dayton police officers are trained regarding the necessary use of force in the field. (Lowe Dep. 41-42; McCall Dep. 30-31; Affidavit of Julian K. Davis ("Davis Aff.") ¶ 3 5/9/07.) However, Scott has not identified a facially unconstitutional official policy nor has he shown that the particular injury he complains of was incurred because of the execution of the City of Dayton's policy on the use of force or because of any other policy. In addition to not identifying a facially unconstitutional policy, Scott also has not shown that the City of Dayton officially sanctioned or ordered the conduct in question.

In addition to showing the liability of a municipality due to an unconstitutional policy, a plaintiff may establish liability on a failure-to-train theory. *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001), *reh'g en banc denied*, 273 F.3d 390 (3d Cir. 2001). On a failure-to-train theory, the plaintiff must establish that "the training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury. *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994) (quoting *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)), *cert. denied*, 513 U.S. 1111 (1995).

In this case, Officers Lowe and McCall described the training they received to become a police officer and their continuing education after graduating from the Dayton Police Academy.

Relevant here, they received training in the use of force at the Dayton Police Academy and applied the training through scenario practice. (Lowe Dep. 9; McCall Dep. 17-18.) After graduating, the Officers are required to take forty hours of continuing education per year. (Lowe Dep. 10; McCall Dep. 13.) In response, Scott has presented no evidence that the training program is inadequate to the tasks that the officers must perform or that the City of Dayton is deliberately indifferent to a police officer's use of force.

Regarding Scott's state tort claims for assault, battery, intentional infliction of emotional distress and false imprisonment, Ohio Rev. Code § 2744.02(A) provides general immunity for political subdivisions, such as municipalities, in connection with proprietary and governmental functions. Ohio Rev. Code § 2744.02(A)(1). Relative here, the provision of a police force is a governmental function. Ohio Rev. Code § 2744.02(C)(2).

Certain exceptions to liability for governmental functions are listed in Ohio Rev. Code § 2744.02(B). *McCloud v. Nimmer*, 595 N.E.2d 492, 536-37 (Ohio Ct. App. 1991) However, none of these exceptions apply here and Scott has not argued that any of them do apply here. Therefore, the City of Dayton is entitled to immunity from Scott's state law claims.

Regarding punitive damages, they are never available against a municipality no matter what degree of fault may be attributable to the municipality's actions or policies. *City of Newport v. Facts Concerts, Inc.*, 453 U.S. 247, 271 (1981). Therefore, Scott is not entitled to punitive damages from the City of Dayton.

In sum, the City of Dayton has presented evidence and law showing that it is not liable for any of the claims against it brought by Scott. Further, Scott has not presented evidence to create a genuine issue of material fact regarding any of his claims against the City of Dayton.

Therefore, there are no genuine issues of material fact and the City of Dayton is entitled to judgment as a matter of law on all of Scott's claims against it.

## Claims Against Chief Davis

The Defendants argue that Chief Davis is not liable for Scott's claims against him in either his official capacity or his individual capacity.  Scott's only response to this allegation is, again, that he needs additional time to conduct discovery, an issue that has been addressed above.

Scott's claims against Chief Davis in his official capacity will be addressed first. A suit against an individual in his or her official capacity is the same as a suit against the governmental entity represented by the official. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir.1989), *cert. denied*, 495 U.S. 932 (1990). As a result, Scott's claims against Chief Davis in his official capacity are the same as claims against the City of Dayton. Further, the City of Dayton is a named Defendant. Therefore, Scott's claims against Chief Davis in his official capacity may be dismissed.

Turning to Scott's claims against Chief Davis in his individual capacity, Scott alleges that the conduct of Chief Davis constitutes gross negligence under state law. (Compl. ¶ 48.) Scott also makes federal allegations that Chief Davis knew about, ratified and took no effective action to prevent the practices which led to his alleged injury.

Supervisory officials can be held liable for their own unconstitutional behavior. *Id.* at 1246. However, the liability of supervisory personnel for the acts of their employees must be based upon more than merely the right to control employees and cannot be based upon simple negligence. *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872 (6th Cir. 1982), *cert. denied*, 459

U.S. 833 (1982).

The failure of a supervisory official to supervise, control or train an employee is not actionable without a showing that the official either encouraged or in some way directly participated in the offensive act. *Leach*, 891 F.2d at 1246. Mere tacit approval or playing a passive role is not enough. *Id.*

In this case, Scott does not identify any personal involvement or active participation by Chief Davis. Chief Davis was not present when Scott was arrested and subsequently incarcerated.

As for his role as the supervisor of Officers Lowe and McCall, Chief Davis avers that they and the other City of Dayton police officers under his command were trained in the necessary use of force to be used in the field. (Davis Aff. ¶ 3.) Officers Lowe and McCall received training in the use of force at the Police Academy. (McCall Dep. 18.) After graduation from the academy, they are required to complete forty hours of continuing education each year. (Lowe Dep. 10; McCall Dep. 13.)

Davis avers that, as Dayton's Chief of Police, he did not authorize, approve or adopt any informal policy, practice or custom among police officers to use excessive force or to refuse to provided medical attention. (Davis Aff. ¶ 3.) Further, he never encouraged or condoned the use of excessive force or the deliberate indifference to the medical needs of an injured victim, and any officer found to use force in an unnecessary or excessive manner would be disciplined. (Id. ¶¶ 3-4.)

The Dayton Police Department Internal Affairs Bureau conducted a full internal affairs investigation into Scott's allegations against Officers Lowe and McCall. (Id. ¶ 8.) Pursuant to

-13-

this investigation, Scott, Officers Lowe and McCall and others were interviewed by Sergeant Terry Zimmerman and Detective Howard Jordan. (Id.) After completing the investigation, the Internal Affairs Bureau recommended that there was no evidence of any misconduct by either Officer Lowe or Officer McCall. (Id.) Also, no disciplinary action was recommended. (Id.)

Chief Davis has presented evidence that Officers Lowe and McCall were properly trained and that he did not encourage or in some way directly participate in any use of excessive force. Scott has presented no evidence to the contrary.

In sum, Scott's claim against Chief Davis in his official capacity is, in essence, a claim against the City of Dayton and is, therefore, dismissed. Further, there are no genuine issues of material fact and Chief Davis is entitled to judgment as a matter of law on Scott's claims against him in his individual capacity.

## False Imprisonment Claim Against All Defendants

The Defendants argue that Scott's claim for False Imprisonment and any alleged Fourth Amendment constitutional violation regarding false arrest must be dismissed as a matter of law. To this, Scott offers no response.

In Ohio, "[a] guilty finding in a criminal proceeding, whether by trial or by plea, constitutes an absolute defense to an action for false arrest or false imprisonment." *Walker v. Schaeffer* 854 F.2d 138, 143 (6th Cir.1988). Further, an alleged violation of the Fourth Amendment for false arrest/imprisonment is not cognizable under 42 U.S.C. § 1983 where the plaintiff is subsequently convicted and that conviction has not been reversed, expunged or invalidated by any court. *Sellers v. City of Lebanon*, 1999 WL 183499 at *1 (6th Cir. Mar. 15, 1999).

In this case, upon reviewing the identification provided by Scott, Officer Lowe determined that Scott had two outstanding arrest warrants. Scott was arrested and subsequently pled guilty to possession of cocaine. Finally, Scott has presented no evidence that his arrest was without probable cause or that his conviction has been reversed, expunged or invalidated. Therefore, there are no genuine issues of material fact and all of the Defendants are entitled to judgment as a matter of law on Scott's False Imprisonment Claim.

Claims Against Officer Lowe

The Defendants argue that there is no cognizable claim in Scott's Complaint that can be sustained against Officer Lowe. Scott responds that Officer Lowe can be held liable because he failed to intervene to prevent Officer McCall from using excessive force during an arrest.

Scott admits that Officer Lowe was at all times "professional about his job." (Scott Dep. 53.) Scott further conceded that he has no complaints regarding the conduct of Officer Lowe. (Id. 53-54.) However, there is evidence that Officer Lowe was present when Officer McCall allegedly used excessive force against Scott and Officer Lowe did nothing to prevent Officer McCall from allegedly using excessive force against Scott. Scott alleges that, when Officer Lowe saw Officer McCall allegedly open the door of the police cruiser, grab Scott's neck and pull him out of the cruiser (Scott Dep. 48-52), Officer Lowe should have stopped Officer McCall before he allegedly used excessive force on Scott.

Police officers may be held liable under Section 1983 for failure to protect a person from the use of excessive force. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir.1997) (citing *Durham v. Nu'man*, 97 F.3d 862, 866 (6th Cir. 1996)). Specifically, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason

to know that excessive force would be or was being used and (2) the officer had both the opportunity and the means to prevent the harm from occurring. *Id.* (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

There is evidence that, after Scott was arrested and handcuffed, Officer Lowe placed him in the rear seat of the police cruiser on the passenger side. (Scott Dep. 42, 44, 48.) While Officer McCall was searching a nearby trash can, Scott and Officer McCall began arguing. (Id. 45-46.) Two seconds later, Officer McCall allegedly opened the door which Scott was sitting next to, pulled Scott by the neck and kneed him at the same time. (Id. 48.) After the incident, Officer Lowe, who was sitting in the front passenger seat during the alleged incident, asked Scott to be quiet and he was. (Id. 47, 52.) Finally, according to Scott, Officer Lowe saw the alleged incident. (Id. 53.)

The Defendants now argue that Officer Lowe had neither the means nor the opportunity to prevent the alleged injury to Scott. However, there is evidence that Officer Lowe was aware of the alleged argument between Scott and Officer McCall, was sitting in the police cruiser in the seat immediately in front of Scott, and saw the alleged incident. Therefore, there are genuine issues of material fact as to whether Officer Lowe observed or had reason to know that excessive force would be or was being used on Scott and whether Officer Lowe had both the opportunity and the means to prevent the alleged harm to Scott.

While the law provides that an officer who has failed to prevent a fellow officer from using excessive force during an arrest can be held liable under Section 1983, no law is cited, nor is the Court aware of any law that provides that an officer who has failed to prevent a fellow officer from using excessive force during an arrest can be held liable for Ohio assault, battery or

intentional infliction of emotional distress claims. Therefore, there are no genuine issues of material fact and Officer Lowe is entitled to judgment as a matter of law on Scott's claims against him for assault, battery and intentional infliction of emotional distress.

## CONCLUSION

Scott offers no explanation as to why the requested discovery has not been completed nor how an extension of discovery would permit Scott to prove his claims against Chief Davis and the City of Dayton. Further, ample time has been allotted for discovery in this matter including three requested extensions of the original discovery deadline. Therefore, Scott's Motion for a Continuance Pursuant to Fed.R.Civ.P. 56(f)(doc. # 44) is OVERRULED.

There are no genuine issues of material fact and the City of Dayton is entitled to judgment as a matter of law on Scott's claims. Therefore, the City of Dayton is DISMISSED.

Also, there are no genuine issues of material fact and Chief Davis is entitled to judgment as a matter of law on Scott's claims. Therefore, Chief Scott is DISMISSED.

In addition, there are no genuine issues of material fact and all of the Defendants are entitled to judgment as a matter of law on Scott's False Imprisonment Claim. Therefore, Scott's false imprisonment claim against all of the Defendants is DISMISSED.

There are genuine issues of material fact as to whether Officer Lowe observed or had reason to know that excessive force would be or was being used on Scott and whether Officer Lowe had both the opportunity and the means to prevent the alleged harm to Scott. Therefore, Officer Lowe is not entitled to summary judgment on Scott's Section 1983 claim against him. However, Officer Lowe is entitled to judgment as a matter of law on Scott's assault, battery and intentional infliction of emotional distress claims.

Finally, the Defendants seek to bifurcate the trial on the issue of official policy/practice against the City of Dayton and Chief Davis. (Doc. #38) However, since the City of Dayton and Chief Davis have been dismissed, this Motion is MOOT.

The Defendants' Motion for Partial Summary Judgment is GRANTED in part and OVERRULED in part. Scott's federal claims and his state claims for assault, battery, intentional infliction of emotional distress, Section 1983 violations and punitive damages against Officer McCall remain to be adjudicated. Also, Scott's Section 1983 and punitive damage claims against Officer Lowe remain to be adjudicated. The remainder of Scott's claims are DISMISSED.

**DONE** and **ORDERED** in Dayton, Ohio, this Twenty-Eighth day of June, 2007.

**s/Thomas M. Rose**

_____
THOMAS M. ROSE
UNITED STATED DISTRICT JUDGE

Copies furnished to:

Counsel of Record